## Richmond.

### LEWIS v. THE COMMONWEALTH.

#### FEBRUARY 4th, 1886.

1. CRIMINAL PROCEEDINGS—*New Trials—Rule.*— The well-settled rule of this court in granting new trials, when asked for on the sole ground that the verdict is contrary to the evidence, is to grant them very cautiously, and only when the verdict is manifestly wrong, great weight being due to a verdict rendered by a jury and approved by a judge, before whom the witnesses gave their evidence.
2. IDEM—*Case at bar.*—A case wherein the verdict of murder in the second degree is held to be warranted by the evidence, and the judgment denying a new trial is held to be right.

Error to judgment of the judge of the circuit court of Alleghany county, rendered May 5, 1885, refusing to award a writ of error and *supersedeas* to the judgment of the county court of said county, rendered 6th February, 1885, upon a verdict of the jury on the indictment therein pending against Daniel Lewis, the plaintiff in error, for the murder of one Jim Reeves, *alias* Jim Reed, finding him (the plaintiff in error) guilty of murder in the second degree, and fixing his term of imprisonment in the penitentiary at fifteen years.

Opinion states the case.

*Wm. Skeen,* for the prisoner.

*Attorney-General R. A. Ayers,* for the Commonwealth.

Fauntleroy, J., delivered the opinion of the court.

The record of the proceedings in the county court was presented, with the petition of the prisoner, to the judge of the circuit court of Alleghany county for a writ of error and *supersedeas* to the said judgment of the said county court of Alleghany, and was by said judge refused. Whereupon he applied to and obtained from one of the judges of this court a writ of error and *supersedeas* to the judgment aforesaid. The errors assigned are that the county court erred in overruling the motion of the prisoner to set aside the verdict of the jury and to grant him a new trial, upon the ground that the verdict is contrary to the law and evidence in the case, and because of after discovered evidence; that the *corpus delicti* is not sufficiently proved; and that if the deceased (Jim Reed) was killed by violence or murder, the guilt of the prisoner is not proved, as required by law and the known rules of evidence.

The evidence in the record shows that on Sunday morning, 28th December, 1884, the body of Jim Reed (colored) was found lying in the public road leading from Callahan's Depot, on the Chesapeake and Ohio Railroad, to Fox's, about one-quarter of a mile from the said depot, dead, cold, and stiff, and with a wound in the breast, which, being probed six or eight inches, extended obliquely and downward in the direction of, if it did not reach, the heart, and with his underclothing saturated with blood. A coroner's inquest was held over the said body by Dr. George B. McCorkle, the coroner of Alleghany county, whose testimony proved that he made a *post-mortem* examination of the body of Jim Reeves, *alias* Jim Reed, on the 28th December, 1884, and that he came to his death from the effect of a pistol-shot wound, the ball entering in the right breast and lodging in the sack surrounding the heart, producing the death within two minutes, as he believes,

after receiving the said wound.   Dr. Wylie testified that the wound in the breast of the deceased was made by a bullet, and that "the bullet killed him."   This, we think, very fully and sufficiently establishes the *corpus delicti.*

On the evening of the 27th of December, 1884, the prisoner (Daniel Lewis) and the deceased (Jim Reed), together with Joe Rose, Judy Coles, and Milly Braxton, took the train at Alleghany Station and got off the train at Callahan's Depot, on the Chesapeake and Ohio Railroad, about 7:44 P. M., and set off in company for the house of Elisha Fox, who lived about one mile from the said depot, to attend a party to be that Saturday night at the said Elisha's Fox's house.   At Alleghany Station Jim Reed (the deceased) was drunk, and seemed not disposed to go on the train with the rest of the party, saying that he did not like to be mistreated.   Daniel Lewis (the prisoner) and Joe Rose had hold of the deceased (Jim Reed) trying to put him on the train.   On the train the whole party— three negro men and three negro women—were drunk and noisy, and behaved so badly that the conductor threatened to put them off before they all got off at Callahan's.   The witness (Robert Edwards, colored,) lived at Alleghany Station, and on Saturday evening, before sunset, on 27th December, 1884, and before the train arrived from the West, heard the prisoner (Daniel Lewis) say that he intended to kill Jim Reed the first good opportunity he had; and saw him (prisoner) have a pistol in his pocket at Alleghany Station on the evening of the 27th December aforesaid.   On the way from Callahan's to Fox's Jim Reed (the deceased) was very drunk, and fell back or turned back; whereupon the prisoner (Daniel Lewis) went back, saying that Jim was a friend of his; he would go back and take care of him.   The witness (Judy Coles) testified that she then heard the prisoner say: " If you don't quit cursing me, I'll kill you."   Before the prisoner overtook and

rejoined the party witness heard a report of something; and did not know whether it was a pistol, squib, or what it was. The party (including the prisoner) stayed all night at Fox's, and returned by the same road the next morning to the depot at Callahan's. As they went back they came across the dead body of Jim Reed. The prisoner went and examined the body, and said he had frozen to death; whereupon the witnesses Judy Coles and Milly Braxton, commenced crying; and the prisoner said to them it was no use to cry. He said that when he got to the depot he would tell the agent of his death, and would go to Backbone (station) and git Jim's doctor and come back. Prisoner bought ticket for Judy Coles to Alleghany Station, and one for himself to Backbone Station. On the train he said that he had told the agent. The witness (Elisha Fox) testified that the prisoner, Joe Rose, Judy Coles, and Milly Braxton stayed all night at his house; and that he saw a pistol in possession of the prisoner in his side pocket, and that prisoner drew the pistol out of his pocket at his house. Witness (F. C. Wilson) testified that he is depot agent at Callahan's; that prisoner and Joe Rose bought tickets on Sunday morning, 28th December, 1884, and that neither of them said anything to him about finding a dead man in the road.

The witness, Judy Coles, was recalled for the defence, and testified that she did not see the prisoner, at any time, have a pistol, neither at Alleghany station, on the road, or at Fox's; if he drew a pistol at Fox's, she didn't see it, and she was there all the time the prisoner was.

The witness, Milly Braxton, testified that she did not see the prisoner have a pistol; she was with him from Alleghany to Fox's, and back to Backbone, and never, at any time, saw him have a pistol; thinks that if he had had one, she would have seen it.

The witnesses, Newton Matthews and Silas McDowell, testify

to hearing, at their several homes in the vicinity of the point where the body of deceased was found in the road, the report of what they thought was a pistol, on the night of the 27th December, 1884, about eight o'clock P. M. The evidence is, that the party, including the prisoner and the deceased, got off the train at Callahan's Station, at 7:44 P. M., and started thence for Fox's, one mile distant, and the dead body of Jim Reed was found one-quarter of a mile on the way, thus giving them sixteen minutes to have walked the distance to where Jim Reed fell behind and where the prisoner left the party and turned back to look after him. Upon this evidence the jury found the verdict of guilty against the prisoner of murder in the second degree, and fixed the term of his imprisonment in the penitentiary of the Commonwealth at fifteen years.

We cannot say that the verdict is contrary to, or is not sustained by, the evidence. The jury of the vicinage had the witnesses before them, and both the judge and the jury were acquainted with the witnesses, who were unimpeached; and, upon the well-settled authorities and rule of this appellate court, we are of opinion that the verdict is warranted by the evidence, and ought not to be set aside. Before the jury returned their verdict, the counsel for the prisoner moved the court to send in to the jury an affidavit of Dr. George B. McCorkle, in words and figures as follows:

" *Alleghany county, to-wit:*

" This day Dr. George B. Corkle came before me and made oath that he is coroner of Alleghany county; that, as such, he held a coroner's jury over the dead body of Jim Reeves, *alias* Jim Reed; that he examined the road upon which he is said to have been killed; that there was snow upon the ground, and the road had been traveled so that the snow was trampled down; that his attention was called to points in the road where

it was supposed that there were indications of blood upon the snow; that he examined those points, and does not believe that the snow was discolored with blood, but with iron ore, pulverized by wagons passing over it, and taken up by the snow; but that whether those places were colored with ore or blood, is not important, for not one drop of blood flowed from the dead man, for he examined him carefully, and is not mistaken in saying that his clothing took up every drop of blood that flowed from the wound which caused his death; that he was unwell and confined to his bed when the case was tried, and did not know that evidence would be given tending to show that the snow was discolored with blood.

"GEORGE B. McCORKLE.

"Subscribed and sworn to before me this 5th day of February, 1885.

"A. A. McDONALD, N. P."

Which motion was refused by the court; and court overruled the motion to set aside the verdict and grant the prisoner a new trial, upon the ground of this newly-discovered evidence, embodied in the aforesaid affidavit of Dr. George B. McCorkle. We do not think the court erred in so doing.

The evidence or statement of the said affidavit, if it had been allowed to be sent to the jury, could not have produced a different or modified verdict; and we are of opinion that it was properly refused at that stage of the proceedings.

We see no error in the proceedings in the court below which tried the prisoner, and the judge of the circuit court of Alleghany county properly refused the writ of error to the judgment of the county court of Alleghany, which must be affirmed.

LEWIS, P., DISSENTED.

JUDGMENT AFFIRMED.