*Richmond.*

BROWN v. EPPS, SERGEANT.

FEBRUARY 14, 1895.

1. CONSTITUTIONS OF U. S. AND OF VA.—*Legislative Power.*—The Constitution
   of the United States is a source and grant of power to the Congress of
   the United States.   It is an enabling, and not a restraining, instrument.
   Congress can do nothing except what the Constitution, either directly of
   by reasonable construction, authorizes it to do.   The Constitution of
   Virginia, however, is a restraining instrument, and the Legislature or
   the State possesses all legislative power not prohibited by the Constitu-
   tion.
2. CONSTITUTION OF U. S.—*Amendment VI.—Jury Trial.*—The Constitution
   of the United States, Art. III., sec. 3, declaring that "the trial of all
   crimes, except in cases of impeachment, shall be by jury," applies to
   trials held under the authority of the government of the United States,
   and makes a jury an indispensable requisite of every trial of a person
   accused of crimes in the courts of that government.   Article VI. of the
   Amendments to the Constitution of the United States also applies to
   said courts, and is "to be construed and applied in harmony with all
   the provisions of that instrument."
3. CONSTITUTION OF VA.—*Art. I., sec. 10—Jury Trial.*—Art. I., sec. 10, of the
   Constitution of Virginia, declaring "that a man hath a right to a speedy
   trial by an impartial jury" means that he has a *legal claim* to a trial by
   a jury ; that a jury trial is his *privilege*.   But the presence of a jury is
   not made a jurisdictional fact, without which a court is not duly organ-
   ized for the trial of criminals as is the case in all courts of the United
   States.   "Speedy," as used in the Constitution, is not "immediate,"
   but "without undue delay."   *Callan v. Wilson,* 127 U. S. 540, explained
   and distinguished.
4. SEC. 4106 OF CODE CONSTITUTIONAL.—Sec. 4106 of the Code, giving to the
   several police justices and justices of the peace concurrent jurisdiction
   with the County and Corporation Courts of certain criminal cases, is to
   be construed in conjunction with sections 4107 and 4108 giving to the

person convicted the right of appeal to the County and Corporation Courts, and regulating how said appeal shall be tried. The appeal wholly sets at naught the judgment rendered against him, and sec. 4108 guarantees to him a fair trial by an impartial jury, before whom he stands innocent until his guilt is proven. So construing these sections, sec. 4106 is not in conflict with Art. I., sec. 10, of the Constitution of Virginia. *Miller v. Commonwealth,* 88 Va. 618, overruled.

5. SEC. 4106 OF CODE, AS AMENDED, CONSTITUTIONAL.—Sec. 4106 of Code, as amended by the Act of Assembly, approved February 23, 1894, Acts 1893-4, p. 430, is not in conflict with Art. I., sec. 10, of the Constitution of Virginia.

This was a petition for a writ of *habeas corpus*, filed by John Brown, alleging that on the 25th day of January, 1895, he had been arraigned in the Police Court of the city of Richmond, charged with petit larceny, and, being put upon trial, was adjudged guilty and sentenced to imprisonment in the jail of the city of Richmond for a period of fifteen days. The petition charges "that the sentence of the court was contrary to the spirit of the Constitution of this Commonwealth, which, in Art. I., sec. 10, guarantees (to every man) a fair and impartial trial, in all criminal cases, by a jury of his countrymen."

Petitioner charges that he had been denied a trial by jury, and that therefore he is illegally detained in said jail, and prays the court for a writ of *habeas corpus*. The writ was awarded and the Sergeant of the city made return thereto, and along with his return, and as a part thereof, produced the *mittimus* under which the petitioner was held. The *mittimus*, after reciting the trial and conviction of the prisoner, requires the keeper of the jail of the city of Richmond to receive said John Brown into jail "and there safely keep him for a term of fifteen (15) days, he having elected to be tried by me."

The writ was awarded on the 29th day of January, 1895, and was returnable on the 1st day of February, 1895. Petitioner demurred to the return.

*Charles W. Dunstan* and *Coalter & Wise*, for the petitioner.

*Attorney-General R. Taylor Scott*, for Charles H. Epps, Sergeant.

KEITH, P.: John Brown filed a petition complaning that he was unlawfully detained in custody by Charles H. Epps, Sergeant of the city of Richmond, and praying for a writ of *habeas corpus* from this court, which was awarded.

The Sergeant answers that he holds Brown by virtue of a *mittimus*, from J. J. Crutchfield, Police Justice for the city of Richmond, which is appended to the return and made a part thereof.

Brown, by counsel, demurs to this return as insufficient in law, and for cause of demurrer claims that section 4106, Code of Virginia, 1887, as amended by the Act of the legislature, Acts 1893-'4, page 430, and sections 4107 and 4108 of the Code, are null and void as being repugnant to section 10, Article I, of the Constitution of Virginia, which declares "that in all capital or criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with his accusers and witnesses, to call for evidence in his favor, and to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty; nor can he be compelled to give evidence against himself; that no man be deprived of his liberty, except by the law of the land or the judgment of his peers."

The case of *Mary Miller* v. *Commonwealth*, reported in 88 Virginia, 618, was decided upon the law as set out in sections 4106, 4107, and 4108 of the Code, and the amendment to section 4106, found in Acts of Assembly 1893-'4, was designed to cure the defect which this court declared to exist in that section on account of its repugnancy to the constitutional

provision just quoted. The amendment consists in inserting after the words "conservators of the peace," the words "whenever the person charged with any of the offences hereinafter mentioned elects to be tried by such justice"—so that the act now reads : "The several police justices and justices of the peace of this commonwealth, in addition to the jurisdiction exercised by them as conservators of the peace, whenever the person charged with any of the offences hereinafter mentioned elects to be tried by such justice, shall have concurrent jurisdiction with the county and corporation courts of the State of all cases of assault and battery not felonies, petit larceny, etc." Counsel for the petitioner contends that this amendment does not cure the vice, and therefore it will be proper to examine, first, into the true construction of the statute prior to its amendment, and then to consider the effect of the words introduced by the legislature in the amendment referred to. Cases involving the jurisdiction of justices of the peace under this and similar statutes have been frequently before this court, and in every instance, save in the case of *Mary Miller* v. *Commonwealth*, 88 Va. 618, the validity of the judgment based on the statute has been upheld. *Thomas' case*, 22 Gratt. 912; *Read's case*, 24 Gratt. 618; *Wolverton* v. *Commonwealth*, 75 Va. 910; and *Harrison* v. *Commonwealth*, 81 Va. 419. Inasmuch, however, as it does not appear that the constitutional question here under consideration was presented to the court in any of those cases, it is contended that they are not authorities binding upon us, and it is conceded that their weight as authority is impaired for the reason stated. It does appear, however, that the question of jurisdiction was considered by the court, and indeed underlies the exercise of jurisdiction by all courts in all cases, whether specifically presented or not, so that where it appears that courts of all grades in the State, from justices of the peace to this court, have gone on unin-

terruptedly for many years to exercise jurisdiction under a statute, and that during all that time there has been no doubt entertained nor question raised as to the constitutionality of the law—when all this has been done in the presence of an able and inquisitive bar—a strong presumption is raised that the attack has not been made upon the constitutionality of the law, because, in the judgment of the courts and of the profession, no such ground of objection existed. The same class of cases has been considered in our sister States, notably in the cases of *Jones* v. *Robbins*, 8 Gray (Mass.) 329; *Shafer and wife* v. *Mumna*, 17 Maryland 331; *Beers* v. *Beers*, 4 Conn. 535; *Moundsville* v. *Fountain*, 27 W. Va. 205; *City of Emporia* v. *Volmer*, 12 Kansas 622; *Wong* v. *City of Astoria*, 13 Oregon 538; *Moore* v. *State*, 22 Texas Appeals 117; *Byers & Davis* v. *Commonwealth*, 42 Pa. 89; *McGinnis* v. *State of Tennessee*, 9 Humphries, 43.

The States whose decisions are here quoted base their jurisprudence upon the common law derived from the same fountains from which ours flows, and their decisions, which are evidence of the common law among them, are strongly persuasive, at least of the common law as it exists here. Contemplating for a moment the situation in the Colonies at the time of the Revolution, we find that the evils complained of by them were the same, the means taken to redress them and guard against their recurrence were identical; therefore, their adjudications are entitled to great influence in the construction of similar statutes in our own State. In some of the cases cited prosecutions were for petit larceny, in some for keeping houses of ill-fame, and in others for less serious violations of the law. The case from 22 Texas is a very peculiar one, in this, that the court reversed the judgment of the lower court because it had compelled the accused to go before a jury, when the statute authorized a trial by a court without a jury, and the prisoner had demanded to be tried in accord-

ance with the statute.    The Texas constitution is almost iden-
tical in its terms with ours.    The offense charged there was
an "aggravated assault and battery," and the court was
unanimous.

The principle of all these cases is, that a statute which con-
fers jurisdiction upon a justice of the peace to try such offenses
as are embraced in section 4106 of the Code is constitutional,
provided by a simple procedure a trial by a jury can be had
on appeal to a higher court.    Amer. and Eng. Enc. of Law,
Vol. 3, page 731, and Vol. 4, pages 812 and 813.    The law
is so stated in Bishop on Criminal Procedure, section 893;
Sedgwick on Construction of Statutes, 497.    In the case
under consideration not only is the procedure simple, but it
is an absolutely free and unfettered right of appeal.    The
prisoner is brought before the justice; the warrant makes
known to him the cause and nature of the accusation against
him; he is confronted with accusers and witnesses; he is per-
mitted to call for evidence in his favor; he is not compelled
to give evidence against himself, and a judgment is rendered
against him.    If he feels that the judgment is just, he submits
to it; if aggrieved by it, he appeals, and by the assertion of
his right of appeal the whole force and effect of the judgment
is destroyed; that which by his assent, implied from his
silence, would have been a final judgment, pleadable in bar to
any future prosecution for the same offense, has by his act
become of no effect, and he stands as free as before his arrest,
subject only to the requirement that he must give bond for
his appearance in the appellate court.    Now, what is the sub-
stance of all this?    Does not the determination of the defen-
dant, in which determination he is an absolutely free agent,
wholly set at naught the judgment just rendered against him
and transfer the controversy to another forum, and convert the
proceedings before the justice into a proceeding preliminary
to a trial which is thereafter to take place in the appellate

court, and divest it of all smilitude to a final trial? It seems to me that, looking to the reality and not the form of things, to their substance and not to the names by which they are called, that is the conclusion to which we are inexorably driven.

Follow the accused one step further, when, in obedience to his recognizance, he presents himself before the trial court under section 4108, and there we find that the language of the statute is, "the accused shall be entitled to a trial by a jury in the same manner as if he had been indicted for the offense in said court." That is to say, he has the same guarantees thrown around him to secure to him a fair trial by an impartial jury as are given to all other persons accused of crime, and he stands before that jury innocent until guilt is proved. But it is said that the prisoner is entitled to a speedy trial, and in the *Mary Miller case*, so often cited from 88 Va., the word "speedy" would seem to be considered as equivalent to "immediate," which would have a tendency to limit the discretion of the legislature in prescribing the stages through which a prosecution should pass from the arrest to the conviction of the prisoner. I do not understand the word to have been so used in the constitutional provision which is now being inquired into.

Up to a recent date the procedure in the enforcement of criminal law, beginning with the arrest of the accused and passing through the various stages to his final trial before a jury, have been more elaborate, and therefore more dilatory, than at present. Until recently, the initial step was either the warrant of arrest from the justice of the peace, or a bench warrant from a court issued upon an information, or upon a presentment or indictment of a grand jury. The office of the bench warrant was to cause the apprehension of the accused, who was then to be taken before a justice of the peace to be examined; by the justice he was sent on to an examining

court, and by the examining court was acquitted, or remanded for trial. Compare this elaborate procedure with the simplicity of the present day. The accused is arrested, is examined by a justice, is sent to a grand jury, and is then put upon his trial; or, if the prosecution begins with the indictment or presentment, he is tried at once without an examination before a justice. The utmost simplicity prevails, while every constitutional right is carefully preserved, and the prisoner is secured a "speedy trial before an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty." To my mind, the legislature has taken ample and most satisfactory steps to secure to the accused his constitutional right of a "speedy trial," not by limiting or confining the legislature as to the mode of procedure by which it has been thought wise to guard at once the rights of the prisoner and the interest of the Commonwealth, but by providing that there shall be no undue delay in taking the successive steps in the procedure. Thus, in section 4001 the accused is discharged from imprisonment "if a presentment, indictment, or information be not found or filed against him before the end of the second term of the court at which he is held to answer," unless the failure is due to certain causes set out in the statute and which need not be here enumerated, and, if he be charged with a felony, he shall be forever discharged if four terms of the county, corporation or hustings court shall pass without a trial, unless the failure to try be for reasons specified in the statute, and which must be made to appear of record. These are means which the legislature has thought sufficient to secure a "speedy trial" within the meaning of the constitution—that is, a trial without delay.

If it be said that the statute last cited refers only to felonies, the reply is that that statute, almost in its present form, may be traced back to the birth of our constitutions, and gives much color to the idea that runs through many adjudged cases

that the protection of the constitutions was intended only to apply to the graver classes of offenses, such as treason and felony.

I should have no difficulty in declaring section 4106 of the Code of 1887 constitutional were it·a case of first impression; but, as I before observed, that statute came under judgment before this court in the very recent case of *Miller* v. *Commonwealth*, Judge Lewis delivering the opinion, and was held to be repugnant to the constitutional provision above cited. I entertain for the learned Judge who delivered that opinion the greatest respect, and I differ with him with a most unaffected distrust in the correctness of my own judgment; and when his position appears to be fortified by the Supreme Court of the United States, always entitled to the highest consideration, and its force in this case heightened, to me at least, by the estimation in which I hold the Justice who delivered its opinion in *Callan* v. *Wilson*, 127 U. S. 540, I feel that distrust greatly intensified.

*Callan* v. *Wilson* passes upon the constitutionality of an act of Congress which conferred upon the police justices of the District of Columbia powers very similar to those granted justices of the peace by section 4106; but there, to my mind, the similarity between the two cases ends. The Constitution of the United States is a source and grant of power to the Congress of the United States. It is an enabling and not a restraining instrument. Congress can do nothing except what the Constitution, either directly or by reasonable construction, authorizes it to do; while the legislature of Virginia possesses all legislative power not prohibited by the fundamental law. By the Constitution of the United States, Article III., section 2, clause 3, it is declared that "the trial of all crimes, except in cases of impeachment, shall be by jury." A jury, therefore, is an essential, and indispensable requisite, an integral part of every court held under the authority of the govern-

ment of the United States for the trial of all crimes.   There can be no trial in those courts of a person accused of crime without a jury by virtue of the plain and unambiguous language above quoted.

The presence of a jury becomes then a jurisdictional question, and Justice Harlan was well warranted in saying, in *Callan* v. *Wilson*, "that a judgment of conviction not based upon a verdict of guilty by a jury is void" under the laws of the United States.   The case of *Callan* v. *Wilson* refers also to Article VI. of the amendments of the Constitution, and the learned Judge seems to find a sufficient support for the conclusion reached in the language there used, which is as follows: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

It may be well to inquire here why the sixth amendment to the Constitution was adopted.   Certainly it was not necessary in order to secure a trial by a jury; that had already been done, as we have seen by Article III., section 2, clause 3, of the Constitution, as originally framed, in language plain and emphatic.  "The trial of all crimes except in cases of impeachment shall be by jury" is the direct and positive mandate of Article III., section 2, clause 3, while the sixth amendment says, "that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury;" the provision first quoted putting it beyond the power of Congress to create a court for the trial of criminal offenses without a jury, while the language of the amendment recognizes the right of the accused to the enjoyment of

a trial by a jury, a right which he could waive if Congress saw fit by law to permit him to do so, and this amendment stood alone. He could waive the right either expressly, or by conduct upon his part necessarily implying a purpose to do so. [The sixth amendment, therefore, could not have been intended to secure a trial by a jury. It is equally certain that it was not the intention of those who insisted on its adoption to weaken or impair the right of trial by a jury. The motive for its adoption is, therefore, to be looked for in the other provisions of the amendment. For instance, that the accused shall enjoy the right to a jury trial in the State or district in which the crime shall have been committed, which district shall have been previously ascertained by law; the right to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. It was to embed these rights into the organic law, rights not less sacred than that of a trial by jury, rights indeed necessary to the complete enjoyment of all the benefits of a trial by jury, that the sixth amendment was adopted. It does not alter or affect in any way the construction of Article III., section 2, clause 3.[ It is a part of the Constitution, it is true, entitled to the same weight as other provisions of the Constitution "to be construed and applied in harmony with all the provisions of that instrument." See *Poindexter* v. *Greenhow*, 114 U. S. at page 286. The language of our bill of rights differs from each and both of these provisions. It does not declare that "the trial of *all* crimes *shall be* by jury;" it does not declare that "the accused *shall* enjoy the right to a trial by an impartial jury," but its language is "that a man hath a right to a speedy trial by an impartial jury." That is, he has a legal claim to a trial by a jury. A trial by a jury is his privilege. The existence of the presence of a jury is not made a jurisdictional fact, without which a court is not

duly organized for the trial of criminals, as is the case in all courts of the United States.

Hitherto, I have considered this case upon the law as found in the Code of 1887, and it has seemed to us that prisoners had not been denied, under the law as it then existed, any of their constitutional rights; that the proceeding against them before the justice was in the nature of the jurisdiction exercised by an examining court, unless acquiesced in by them, and it was merely a preliminary, and not an unreasonably dilatory preliminary to the final trial by jury to which the prisoner had a free and unfettered right, with every guarantee and protection thrown around him to enable him to submit his case to an impartial jury of his country; that in its essence the judgment of the justice rested upon the implied assent of the accused, because one word of objection upon his part annulled the judgment rendered and transferred the controversy to another forum, and I have been constrained to the conclusion that this statute in no wise denied or abridged the constitutional rights of the citizen. If this effect is to be attributed to the failure upon the part of the prisoner to make objection to the exercise of the jurisdiction by the justice by appealing therefrom, *a fortiori* would his express election to be tried by the justice have that effect. That a prisoner may waive many of his constitutional rights is beyond a doubt. The right to a trial by a jury is only one among the several rights enumerated in section 10 of Article I. of the Constitution. They all stand upon an equal footing; they are all necessary to the complete enjoyment of that personal liberty which is our birthright, and which it is the duty not only of the courts, but of every citizen, to jealously guard. They are all designed, the one not more than the other, to safeguard the accused in all criminal prosecutions, so that no man may "be deprived of his liberty, except by the law of the land or the judgment of his peers." He cannot be com-

pelled to give evidence against himself, and the law which would require him so to do would be unconstitutional. And yet it is clear that he may waive this immunity. See *Cullen's case*, 24 Grattan 624, and *Hallinger* v. *Davis*, 146 U. S. 314; and so also, it is declared by text-writers and adjudged cases that a prisoner charged with a misdemeanor may waive a trial by a jury where the waiver is expressly authorized by the legislature. I, therefore, have no difficulty in holding that the act as it now stands is constitutional. It is for those who question the validity of the statute to show that it is invalid. It is not denied that there is a strong presumption in favor of the constitutionality of the law, and in every case, if the law admits of two constructions, by one of which its constitutionality may be sustained, while upon another it would be declared unconstitutional, the courts are held down to accept that construction which maintains its validity. It is said "that to accord to the accused a right to be tried by a jury in an appellate court after he has been once fairly tried otherwise than by a jury in a court of original jurisdiction, and sentenced to pay a fine, or be imprisoned for not paying, does not satisfy the requirement of the Constitution." This language is used by Justice Harlan in the case of *Callan* v. *Wilson*, and is cited with approval by Judge Lewis in *Miller* v. *Commonwealth*, 88 Va. 618.

For the reasons already given I do not consider this judgment as authority in construing the Constitution of Virginia, and I must say, also, that to my mind it does not show a full appreciation of the value of a jury as an instrumentality in the administration of justice. Long experience with juries has satisfied me that all the encomiums passed upon them have done them no more than justice, but, if it be true that the judgment of the justice, rendered it may be upon other evidence than that adduced before them, in the face of the law which requires them to try the prisoner as though upon an

indictment, and to consider him innocent until he has been proven guilty; if, I say, in the face of that plain duty under the law, a jury is so easily swayed and influenced in its judgment, and is so incapable of being controlled by the law and evidence before them, then my estimate of the value of jury trials must be reconsidered.    My experience, however, is that, while juries have faults, those faults do not lie in the direction of ready subservience to authority.    They are very much more apt to disregard the direct instructions of the court presiding at the trial, than to attribute any, even the slightest, weight to the judgment of the justice.    But even if it were so; grant that the jury is prejudiced by the judgment of the justice, is that the fault of the law?    The law declares that the prisoner shall not be so prejudiced.    If a jury in disregard of the law visits upon the prisoner the consequences of the judgment from which he has appealed it is due not to any vice in the law, but to the infirmity of human nature; but I think those who have had a large experience with juries would be ready to acquit them of any such imputation, and would decline to share the distrust in the integrity, intelligence, and impartiality of juries manifested by those who indulge the apprehension which seems to be indirectly expressed in the paragraph last quoted from *Callan* v. *Wilson.*    The former conviction could not be said to constitute an impairment of the right of trial by jury, unless it worked a prejudice to the prisoner, and, with a free and unfettered appeal to a jury, it could work no prejudice to the accused, unless the jury, recreant to its sworn duty under the law, disregarding the plain mandate of the statute, heedless of the instructions of the court, should try him not upon the law and evidence before them, but upon the judgment of the justice, which had been annulled and effaced.    This apprehension appears to me to be strained and fanciful in the extreme, and must rest as its ultimate support upon a distrust in the integrity of that tribunal which has been for centuries regarded as the

great bulwark of the liberties and immunities of the citizen against encroachment from any quarter. A weak .defense it would prove were it so ignorant, so feeble, or so corrupt.

I am therefore of opinion that the demurrer to the return should be overruled, and that the prisoner should be remanded to the custody of the Sergeant of the city of Richmond.

The other judges concur in the opinion of KEITH, P.

PRISONER REMANDED.