PRESENT:  Kinser, C.J., Lemons, Goodwyn, Mims, McClanahan,
          and Powell, JJ., and Russell, S.J.

SCOTT A. GALLAGHER

                                          OPINION BY
v.  Record No. 111720      SENIOR JUSTICE CHARLES S. RUSSELL
                                      September 14, 2012
COMMONWEALTH OF VIRGINIA

             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Lorraine Nordlund, Judge

GEORGE JUNIOR VANOVER

v.  Record No. 111727

COMMONWEALTH OF VIRGINIA

             FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
                     Patrick R. Johnson, Judge

     These appeals were separately granted and briefed, and were

argued on the same day.  They present the same question of law

and are therefore considered together.  The question presented

involves the interplay between the Constitution of Virginia and

Code § 18.2-308.2, relating to jurisdiction of the circuit

courts to restore rights to ship, transport, possess or receive

firearms (firearm rights) to a person who has lost those rights

by suffering a felony conviction.  The question arises where the

convicted person's political disabilities have subsequently been

restored by the Governor.  No material facts are in dispute.

                      Facts and Proceedings

                          A.  Gallagher

In 1985, Scott A. Gallagher was convicted of two felonies in the Circuit Court of Fairfax County. In 2010, he sent a petition to the Governor, pursuant to Article V, Section 12 of the Constitution of Virginia, requesting removal of the political disabilities resulting from his convictions. On December 15, 2010, Governor Robert F. McDonnell entered an order expressly restoring to Gallagher his rights to vote, hold public office, serve on a jury, and be a notary public. The Governor's order expressly excepted the right to ship, transport, possess or receive firearms. Gallagher received the Governor's order with a covering letter from the Secretary of the Commonwealth advising him that "Governor McDonnell's action on your behalf removes all political disabilities imposed as the result of your felony conviction except the right to ship, transport, possess or receive firearms, which must be restored in accordance with Va. Code § 18.2-308.2.' "

Pursuant to that statute, Gallagher filed a petition in the Circuit Court of Fairfax County seeking restoration of his firearm rights. The Commonwealth's Attorney filed a memorandum requesting denial of the petition. On July 8, 2011, the court entered an order denying Gallagher's petition, holding that "as [an] adult felon[, petitioner] must first receive a full restoration of rights from the Governor and [p]etitioner has not received a full restoration of rights." We granted Gallagher an

2

appeal.  The Attorney General, for the Commonwealth, conceded error and moved this Court to reverse the circuit court's judgment and remand the case for further proceedings.

## B.  Vanover

In 1968, George Junior Vanover was convicted of a felony in the Circuit Court of Buchanan County.  In 2007, Vanover sent a petition to the Governor, pursuant to Article V, Section 12 of the Constitution of Virginia, for the removal of the political disabilities resulting from his conviction.  On October 4, 2007, then-Governor Timothy M. Kaine entered an order expressly "remov[ing] the political disabilities, except the right to ship, transport, possess or receive firearms, under which he labors by reason of his conviction."

On January 20, 2011, Vanover, by counsel, filed a petition in the Circuit Court of Buchanan County for restoration of his right to "possess and carry firearms."  The Commonwealth's Attorney filed a memorandum requesting denial of the petition. In a letter opinion, the court held that the Governor's order removing Vanover's political disabilities expressly excluded the restoration of firearm rights.  The court ruled that this exclusion amounted to a condition precluding the restoration of firearm rights by the court.  The court denied Vanover's petition by order entered June 28, 2011.  We awarded Vanover an appeal.  The Attorney General, for the Commonwealth, conceded

3

error and moved this Court to reverse the circuit court's judgment and to remand the case for further proceedings.

Analysis

These appeals present a pure question of law involving constitutional and statutory interpretation. We apply a de novo standard of review to such questions. <u>Montgomery County v. Virginia Dep't of Rail & Pub. Trans.</u>, 282 Va. 422, 435, 719 S.E.2d 294, 300 (2011).

Code § 18.2-308.2(A) makes it a felony for any person who has previously been convicted of a felony to possess or transport a firearm. Code § 18.2-308.2(B), however, provides that the prohibitions of subsection (A)

> shall not apply to . . .(iii) any person who has been pardoned or whose political disabilities have been removed pursuant to Article V, Section 12 of the Constitution of Virginia provided the Governor, in the document granting the pardon or removing the person's political disabilities, may expressly place conditions upon the reinstatement of the person's right to ship, transport, possess or receive firearms.

Code § 18.2-308.2(C) then provides:

> Any person prohibited from possessing, transporting or carrying a firearm or stun weapon under subsection A, may petition the circuit court of the jurisdiction in which he resides for a permit to possess or carry a firearm or stun weapon; however, no person who has been convicted of a felony shall be qualified to petition for such a permit unless his civil rights have been restored by the Governor or other appropriate authority. A copy of the petition shall be mailed or delivered to the attorney for the

4

Commonwealth for the jurisdiction where the petition was filed who shall be entitled to respond and represent the interests of the Commonwealth.  The court shall conduct a hearing if requested by either party.  The court may, in its discretion and for good cause shown, grant such petition and issue a permit.  The provisions of this section relating to firearms, ammunition for a firearm, and stun weapons shall not apply to any person who has been granted a permit pursuant to this subsection.[1]

Prior to the independence of the thirteen former British American colonies, the power to exercise executive clemency lay within the prerogative of the crown.  5 William Blackstone, Commentaries *395-96.  After the American Revolution, as part of a general reaction against the unfettered exercise of executive power, Virginia and seven other newly-independent states restricted the exercise of that power to the Governor with the concurrence of an advisory board or council of some kind.  The original 1776 Constitution of Virginia granted the Governor the "power of granting reprieves or pardons" but only "with the advice of the Council of State."  The Governor was not given the power to act alone in granting reprieves and pardons until

---

[1] The Attorney General contends that the term "civil rights" is employed in this subsection to permit felons convicted in the courts of other jurisdictions, where the executive is empowered to restore "civil rights" rather than to remove "political disabilities," to petition the circuit court of the Virginia jurisdiction in which they reside for restoration of their firearm rights.  We agree.  See Farnsworth v. Commonwealth, 270 Va. 1, 2, 613 S.E.2d 459, 460 (2005).

adoption of the Constitution of 1851.  In the constitutional revision of 1870, the Governor was given the additional power to "remove political disabilities consequent to conviction of offenses."  2 A. E. Dick Howard, Commentaries on the Constitution of Virginia, 641-42 (1974).

Article V, Section 12 of the present Constitution of Virginia (effective July 1, 1971) provides:

> The Governor shall have power to remit fines and penalties under such rules and regulations as may be prescribed by law; to grant reprieves and pardons after conviction except when the prosecution has been carried on by the House of Delegates; to remove political disabilities consequent upon conviction for offenses committed prior or subsequent to the adoption of this Constitution; and to commute capital punishment.

> He shall communicate to the General Assembly, at each regular session, particulars of every case of fine or penalty remitted, of reprieve or pardon granted, and of punishment commuted, with his reasons for remitting, granting, or commuting the same.

As indicated above, our constitutional history demonstrates a cautious and incremental approach to any expansions of the executive power, leading to the conclusion that the concerns motivating the original framers in 1776 still survive in Virginia.  If the executive clemency power were construed to include the restoration of firearm rights, then Code § 18.2-308.2(C), insofar as it grants the circuit courts jurisdiction to restore them, would not only be redundant, but would be an

6

unconstitutional intrusion by one branch of government on the powers of another.[2]

There is, however, "no stronger presumption known to the law than that which is made by the courts with respect to the constitutionality of an act of [the] Legislature."  Whitlock v. Hawkins, 105 Va. 242, 248, 53 S.E. 401, 403 (1906).

> "The Legislature represents the sovereign authority of the people, except so far as restrictions are enforced by the Constitution in express terms or by strong implication.  We look to the Constitution of the State not for grants of power, but for limitations.  When the prohibition is not found in the language of that instrument, or in its framework and general arrangement, there is no solid ground to pronounce the enactment void.  The infraction must be clear and palpable."  This conclusion follows from the accepted canon of construction applicable to the Constitution of this State, that it is a restraining instrument, and that the General Assembly of the State possesses all legislative power not prohibited by the Constitution.

Id. (citations omitted).

Article VI, Section 1 of the Constitution of Virginia grants to the General Assembly the power to determine the jurisdiction of the courts of the Commonwealth.  The legislative

---

[2] Article III, Section 1 of the Constitution of Virginia provides, in pertinent part: "The legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time."

7

grant of jurisdiction to the circuit courts, in Code § 18.2-308.2(C), to restore firearm rights falls directly within that constitutional grant of power to the General Assembly and there is no question of the statute's constitutionality.

We construe the term "power to . . . remove political disabilities," contained in Article V, Section 12 of the Constitution, not to include the power to restore firearm rights. There is therefore no overlap or tension between Article V, Section 12 and Article VI, Section 1, and no violation of the separation of powers guaranteed by Article III, Section 1 of the Constitution.

Thus, the Governor is empowered to remove political disabilities, but not to restore all rights lost as a result of a felony conviction. The jurisdiction to restore firearm rights lost in those circumstances is vested solely in the circuit courts. Strong policy considerations support that conclusion. Statutory proceedings to consider restoration of firearm rights involve consideration of local concerns for public safety. Such proceedings are not ex parte, but adversarial in nature. The Commonwealth's Attorney receives notice and has an opportunity to be heard and to present evidence which may only be available from local witnesses and records. An impartial fact-finder is best situated to resolve conflicts that may arise in the evidence and arguments.

8

Code § 18.2-308.2(B)(iii) authorizes the Governor, in the instrument removing a person's political disabilities, to "expressly place conditions upon the reinstatement of the person's right to ship, transport, possess or receive firearms." Such conditions, if imposed, would limit the circuit court's authority to grant an unrestricted restoration of firearm rights, but the Governor's authority to impose such conditions does not amount to a power to unilaterally deny a petitioner the right to petition the court for restoration of his firearm rights, or divest the court of its jurisdiction to entertain such a petition. In the cases on appeal, neither Governor imposed any such conditions.

Both Governors whose acts are involved in these appeals correctly exercised their constitutional authority. Both removed the respective petitioners' political disabilities but declined to restore their firearm rights and referred them to the circuit courts for that purpose, recognizing that a two-step process is necessary. A person convicted of a felony in Virginia must first obtain an order from the Governor removing his political disabilities as a condition precedent to his right to petition the circuit court for restoration of his firearm rights. A person convicted of a felony in another jurisdiction may similarly satisfy that condition precedent by first

9

obtaining a restoration of his civil rights from the appropriate authority of that jurisdiction.

In Farnsworth, 270 Va. at 2, 613 S.E.2d at 460, we affirmed the conviction of a defendant, who had been previously convicted of a felony in West Virginia, of unlawful possession of a firearm in Virginia by a felon.  After serving his West Virginia sentence, Farnsworth had received a document from the West Virginia Department of Corrections stating:  "Any and all civil rights heretofore forfeited are hereby restored."  In holding that document insufficient as a defense, we observed that there were two statutory exceptions whereby Farnsworth could have been allowed lawfully to possess a firearm in Virginia, (1) removal of his political disabilities by the Governor, or (2) restoration of his civil rights by the "Governor or other appropriate authority" followed by issuance of a permit by the appropriate circuit court. Id.

We have concluded, for the constitutional reasons discussed above, that firearm rights may only be restored to a convicted felon by a permit issued by a circuit court.  To the extent Farnsworth can be read to imply that a Governor's order removing political disabilities would be sufficient alone to restore a felon's firearm rights, without a permit issued by a circuit court pursuant to Code § 18.2-308.2(C), Farnsworth is expressly overruled.

10

For the reasons stated, we conclude that the Circuit Court of Fairfax County erred in ruling that Gallagher's petition must be denied because the Governor had not given him a full restoration of rights.  We also conclude that the Circuit Court of Buchanan County erred in ruling that Vanover's petition must be denied because the Governor, by excepting firearm rights from his order removing political disabilities, had placed a condition on Vanover's right to possess firearms that precluded the court from considering Vanover's petition.  Accordingly, we will reverse both judgments and remand the cases to the respective circuit courts for further proceedings consistent with this opinion.

Record No. 111720 - <u>Reversed and remanded</u>.
Record No. 111727 - <u>Reversed and remanded</u>.