COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Friedman and Senior Judge Petty
Argued at Williamsburg, Virginia

**PUBLISHED**

JUAN B. RODRIGUEZ, S/K/A
 JUAN BAUTISTA RODRIGUEZ

v.     Record No. 0480-24-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY BENNETT MALVEAUX
SEPTEMBER 9, 2025

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey,[1] Judge

Roger A. Whitus (Slipow & Robusto P.C., on brief), for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Juan Bautista Rodriguez appeals his convictions for object sexual penetration of a victim

under 13 years old, child endangerment, indecent liberties by a custodian (five counts), and

aggravated sexual battery of a victim under 13 years old (five counts). He argues that the trial

court erred by denying his motion to strike two potential jurors for cause and by admitting

evidence of his past convictions. He also challenges the sufficiency of the evidence supporting

his convictions. We agree that the trial court erred by not striking one of the potential jurors.

Accordingly, we reverse Rodriguez's convictions and remand for further proceedings.

---

[1] The Honorable Joseph C. Lindsey presided over the trial. The Honorable Robert B.
Rigney denied Rodriguez's motion to exclude evidence of past convictions.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Womack v. Commonwealth*, 82 Va. App. 289, 292 n.1 (2024) (quoting *Konadu v. Commonwealth*, 79 Va. App. 606, 610 n.1 (2024)).

Belkis Mazo Castellanos moved to Virginia from Honduras around 2016. She lived in Norfolk with her father, sister, two daughters, A.C. and I.C., a niece S.C., and a nephew. She met Rodriguez at church shortly after moving from Honduras. He helped her with immigration documents and house projects, and she trusted him. She did not know that he had prior criminal convictions.

Each morning, the four children rode the bus to school a few hours after the adults left for work, necessitating a morning babysitter. In January 2022, Mazo Castellanos asked Rodriguez if he could help the children get ready for school in the morning and ensure that they got on the bus. Rodriguez agreed. At the time, A.C. was nine years old, S.C. was eight years old, and I.C. was five years old.[2] Rodriguez babysat the children for a week in January 2022. I.C. was sick one of those days and stayed at Rodriguez's house instead of going to school. None of the children reported anything unusual happening during that week, and Mazo Castellanos did not notice any change in their behavior. After a week, Mazo Castellanos's cousin, Nelli Soledad Tinoco Mancia, moved to Norfolk and began babysitting the children.

---

[2] Mazo Castellanos's nephew was six years old.

Rodriguez continued to visit the house regularly, often bringing presents and treats for the children. One day in February 2022, Rodriguez visited and played with the children in the backyard by the trampoline. Mancia was watching them through the bedroom window from about 20 feet away when she saw Rodriguez grab S.C., lay her on the trampoline, and "touch[] all of her little body," including her vagina, over her clothes. Mancia also saw Rodriguez kiss S.C. on the mouth.

Mancia summoned the children inside and questioned them after Rodriguez left. S.C. told Mancia that "[t]he same thing [Mancia] saw" had, in fact, happened and that Rodriguez "would always touch them." I.C. told Mancia that, when she was sick, Rodriguez "had taken her to his house and that he had started touching her." The other two children denied that they had been abused. Mancia told Mazo Castellanos about what she had seen and heard. When Mazo Castellanos returned home, S.C. and I.C. each told her that Rodriguez "had touched [their] private parts."[3] I.C. again claimed that Rodriguez had sexually abused her at Rodriguez's house when she was sick. Mazo Castellanos called the police the next day.

Arielle Hendricks, a forensic interviewer at the Children's Hospital of the King's Daughters Child Advocacy Center ("King's Daughters"), interviewed S.C. and I.C. in March 2022. S.C. described Rodriguez forcing her to sit in his lap and touching her "private part," both inside and outside her clothes, while on the couch, in the living room, and in the bedroom. She described the trampoline incident as well but claimed that Rodriguez had not molested her on the trampoline but rather had molested A.C. During her interview, I.C. denied that Rodriguez had ever touched her inappropriately.

---

[3] Mazo Castellanos testified that each child told her that Rodriguez had touched their "private parts" "[m]ore than two times." Originally, she had reported to the police that Rodriguez had touched S.C. inappropriately twice and I.C. once.

Detective Erin Cangiano referred I.C. for a second forensic interview in October 2022 because I.C. "was making more disclosures at home." This time, I.C. told Hendricks that Rodriguez had touched her "in the bad parts" eight to ten times. The first time, I.C. was watching YouTube on the couch when Rodriguez touched her "bad part" under her clothes. I.C. described several other incidents, including a time when Rodriguez pulled down her pants, but struggled to remember many of the details. She did not mention the trampoline incident or an incident at Rodriguez's house.

Before trial, Rodriguez moved to exclude evidence that he had been convicted in 2010 of aggravated sexual battery (two counts), indecent liberties (two counts), attempted rape of a victim under 13, attempted forcible sodomy (two counts), and unlawful videotaping or photographing a minor (two counts). The trial court reviewed the stipulation of facts for those offenses. According to that stipulation, Rodriguez had met a woman at his church and volunteered to babysit her two seven-year-old daughters and take them to doctor's appointments. He took photographs of the girls in various stages of undress, attempted to have them touch his penis, touched their vaginas, and attempted to penetrate one of the victims with his penis. The trial court denied Rodriguez's motion and allowed the Commonwealth to submit the 2010 sentencing order at trial.

The parties convened for a jury trial in December 2023. The trial court explained to the potential jurors during voir dire that Rodriguez was presumed innocent until proven guilty, and the potential jurors confirmed as a group that they understood. During the court's preliminary questioning, none of the potential jurors indicated that they had formed an opinion as to Rodriguez's guilt or innocence or that they were aware of any bias or prejudice against the Commonwealth or Rodriguez.

- 4 -

Juror 12 informed the court that she had been the victim of a bank robbery and had been molested when she was 12 years old. When the Commonwealth asked if she could be fair and impartial despite that experience, she responded, "[i]t just brings me a lot of anxiety to honestly—it would . . . bring me a lot of turmoil and anxiety to have to be a part of that." The Commonwealth asked again if she could be fair and impartial, and she responded, "[i]f I had to be, yes, but it would . . . affect my mental health considerably, yes." She further explained that she was "[a]bsolutely" concerned that her past experiences would stick with her.

Juror 12 had also indicated during group voir dire that she believed "that a person is more likely to be guilty of an offense if he has been convicted of similar offenses before." Upon later questioning by the Commonwealth, she explained that her opinion was "based on [her] experiences and just 47 years on this earth." The court then posed the following question to her:

> COURT: One follow-up question for you, ma'am. Would any of your thoughts about the likelihood that a person who's done something before would do it again or have been found guilty of having done something before, might do it again, so overwhelming in your thought process that you couldn't fairly and impartially listen to the facts and the evidence and make a decision based upon the facts and the evidence?
>
> JUROR 12: It would—it's a very emotional subject. It would be very hard, yes.
>
> COURT: Thank you so very much. Appreciate your honesty.

Rodriguez moved to strike Juror 12 for cause. The Commonwealth opposed the motion on the ground that this "kind of case . . . would be hard for anyone." The court denied the motion, explaining that "[j]ust about everyone who has . . . heard anything about the nature of the charges and the fact that it's alleged to involve child victims has said it would be difficult, but she also said that she could be fair and impartial."

Rodriguez also moved to strike Juror 20. The trial court denied that motion as well.

S.C. and I.C. both testified at trial. S.C. testified that Rodriguez gave her "a bad touch . . . [a]bout four or more times" and described four specific instances. The first time, S.C. and Rodriguez were sitting on the living room couch when Rodriguez touched S.C.'s "private part" under her clothes. Rodriguez touched S.C. "inside" her "private part," which felt "[g]ross" and hurt "[a] little bit." S.C.'s sister and cousins were playing at a table in the same room when it happened.

The second incident occurred when S.C., I.C., and Rodriguez were at the dining room table. Rodriguez requested that S.C. sit on his lap, which she declined. She acquiesced, however, when he asked her a second time. Rodriguez then touched her "private part" outside her clothes. He did not stop when she told him to. He continued touching her for "[a]bout two minutes or more" and then let her down.

The third incident occurred in the children's shared bedroom.[4] Rodriguez laid S.C. on her bed and touched the outside of her "private part" under her clothes. He touched her for one minute and stopped when she told him to. S.C. did not remember if anybody else was in the room at the time.

The fourth and final time was in the backyard on the trampoline. S.C. testified that Rodriguez touched her outside her clothes "[a]ll over the place," including her "private part," chest, and feet. According to S.C., nobody else was in the yard when that occurred.

S.C. claimed that she did not disclose the abuse before being questioned by Mancia because Rodriguez had told her that "he would do something bad" to her if she said anything, and she was "scared." Rodriguez cross-examined S.C. about inconsistencies in her trial testimony, preliminary hearing testimony, and forensic interview statements. When asked on

---

[4] S.C. testified that all four children, including I.C., slept in the same bedroom, which had two bunkbeds. I.C. denied sleeping in that room and instead claimed to sleep in Mazo Castellanos's room.

cross-examination why she had told Mazo Castellanos and Mancia that Rodriguez had abused her "two or more times" instead of "four or more times," S.C. responded, "[b]ecause I was eight, and I really didn't know what was going on." Rodriguez submitted S.C.'s preliminary hearing testimony as an exhibit.[5]

I.C. testified about two "bad touches." The first time was on the living room couch while Rodriguez was babysitting. Rodriguez touched the outside of I.C.'s "private parts" under her clothes. Nobody else was on the couch, but the other children were asleep at home. I.C. did not remember how long it lasted or how it ended, and testified that Rodriguez did not say anything during the encounter.

The second "bad touch" happened when I.C. went to Rodriguez's house while she was sick. I.C. testified that she was watching YouTube videos in Rodriguez's bedroom when Rodriguez "tried to do it again," which she clarified on cross-examination to mean what he had done previously on the couch. She remembered Rodriguez pulling down each of their pants but did not remember what happened next. Rodriguez then left without saying anything.

Rodriguez cross-examined I.C. about her inconsistent statements. I.C. testified that she did not originally disclose the abuse because she was "scared and embarrassed." Similarly, she testified that she had initially denied the abuse to Hendricks because she "was scared." And she claimed that she had exaggerated the number of touches in the second interview with Hendricks because she "was embarrassed and scared."

Cassandra Elverum, a physician assistant with King's Daughters, testified as an expert in child abuse. She examined S.C. and I.C. in April 2022. They both had a normal physical

_____

[5] S.C. testified at the preliminary hearing that Rodriguez touched her "private part" more than five times. She described four incidents that had occurred on the couch, dining room table, and her bed, but did not remember what had happened on the trampoline. When asked at the preliminary hearing why she did not tell her parents, she answered, "I don't know."

examination, which Elverum testified was very common and did not rule out the possibility of sexual abuse. According to Elverum, only about five percent of sexually abused children present with an abnormal physical exam.

Hendricks testified about her interviews with S.C. and I.C. and as an expert witness in forensic interviewing and child abuse disclosure. She opined that it "is not uncommon" for children to deny being abused before ultimately disclosing and that children disclose abuse at different times. She further explained that it is common for details to change and that children are not good at quantifying how often something occurred. She acknowledged that younger children are more susceptible to influence and suggestibility.

Dr. Michael Lamb testified during Rodriguez's case as an expert witness on child memory and testimony, child sexual abuse, and developmental psychology. He explained that younger children retain fewer details and forget those details more quickly. And he explained that it is common for children to confuse their own memories with events that adults told them had occurred.

Rodriguez testified in his own defense. He confirmed the basic details of his relationship with the Castellanos family but denied that he had ever touched any of the children sexually. He admitted that he had not disclosed his prior convictions to Mazo Castellanos. And he claimed not to remember having been ordered to avoid contact with children under the age of 12 as result of those prior convictions.

The Commonwealth submitted the 2010 sentencing order as an exhibit but did not present any of the underlying facts of those offenses to the jury. After hearing the evidence and argument, the jury found Rodriguez guilty of object sexual penetration against S.C., aggravated sexual battery against S.C. (four counts), indecent liberties by a custodian against S.C. (four counts), child cruelty against S.C., aggravated sexual battery against I.C., and indecent liberties

by a custodian against I.C.  The trial court sentenced Rodriguez to life imprisonment plus 69

years, with 15 years suspended.

ANALYSIS

I.  Rodriguez's Prior Convictions[6]

"It is well-settled that decisions regarding the admissibility of evidence lie within the trial

court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."  *Shahan*

*v. Commonwealth*, 76 Va. App. 246, 255 (2022) (quoting *Nottingham v. Commonwealth*, 73

Va. App. 221, 231 (2021)).  Underpinning this review is a "bell-shaped curve of reasonability,"

which "rests on the venerable belief that the judge closest to the contest is the judge best able to

discern where the equities lie."  *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting

*Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).  "An abuse of discretion occurs only when

'reasonable jurists' could not disagree as to the proper decision."  *Warren v. Commonwealth*, 76

Va. App. 788, 799 (2023) (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013)),

*aff'd per curiam*, 303 Va. 60 (2024).

"Generally, evidence of a defendant's other criminal acts is 'inadmissible to prove guilt of

the crime for which the accused is on trial, even if the other crimes are of the same nature as the

crime charged in the indictment.'"  *Blankenship v. Commonwealth*, 69 Va. App. 692, 698 (2019)

(quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 380 (2005)).  That prohibition is enshrined

in Virginia Rule of Evidence 2:404(b), which states that, "*[e]xcept as provided in Rule 2:413 or by*

---

[6] Although we ultimately reverse Rodriguez's convictions and remand for further
proceedings, we address Rodriguez's evidentiary challenge because it "will likely arise again
upon remand."  *Cain v. Lee*, 290 Va. 129, 136 (2015).

*statute*, evidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person . . . to show that the person acted in conformity therewith."[7] (Emphasis added).

The Supreme Court adopted Rule of Evidence 2:413 to implement Code § 18.2-67.7:1. *Blankenship*, 69 Va. App. at 698. Together, the statute and the Rule provide an express exception to Rule 2:404(b)'s general prohibition against past-crimes evidence. *Id.* at 700-01. "In a criminal case in which the defendant is accused of a felony sexual offense involving a child victim, evidence of the defendant's conviction of another sexual offense or offenses is admissible and may be considered for its bearing on any matter to which it is relevant." Code § 18.2-67.7:1(A); Va. R. Evid. 2:413(a). "Code § 18.2-67.7:1 changed the general prohibition against character evidence to prove propensity by creating a narrow exception in child sexual abuse cases." *Blankenship*, 69 Va. App. at 700-01. Thus, evidence "of a defendant's prior conviction in prosecutions for felony sexual offenses against a child '*for the purpose of establishing propensity* to commit other sexual offenses'" is admissible. *Id.* at 701 (emphasis added) (quoting *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007)).

Such evidence is subject to the balancing test in Rule of Evidence 2:403, and so must be excluded if "the 'probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice.'" *Blankenship*, 69 Va. App. at 700 (alteration in original) (quoting Va. R. Evid. 2:403). In applying that balancing test, the trial court may "consider underlying details of the prior conviction," though only the conviction order may be admitted. *Id.*

Rodriguez argues that the trial court erred by admitting evidence of his 2010 convictions. He contends that the court abused its discretion when balancing the probative value of the 2010

---

[7] The Rule allows evidence of "other crimes, wrongs, or acts" to be admitted if "it is relevant to show motive, opportunity, intent" or various other facts and "the legitimate probative value of such proof outweighs its incidental prejudice." Va. R. Evid. 2:404(b).

sentencing order against the danger of unfair prejudice. And he contends that admitting the evidence violated his constitutional due process rights. Rodriguez's arguments are unpersuasive.

Rodriguez's argument that the evidence was irrelevant and highly prejudicial because it was admitted solely to establish propensity and did not establish any of the other facts listed in Rule 2:404(b) misses the mark because Rule 2:404 does not control the analysis. The trial court admitted the evidence under Code § 18.2-67.7:1 and Rule 2:413, which require only that the evidence be relevant to any matter at issue, not the specific matters listed in Rule 2:404. As the Supreme Court of the United States has explained, "'propensity evidence' is relevant" but is often excluded due to the risk of unfair prejudice. *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982)). Evidence that a defendant has committed similar offenses in the past "might logically be persuasive that [the defendant] is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much." *Id.* (quoting *Michelson v. United States*, 335 U.S. 469, 475 (1948)). Thus, accepting Rodriguez's argument that propensity evidence is relevant only if it *also* shows one of the other facts in Rule 2:404(b), such as motive or opportunity, would vitiate Code § 18.2-67.7:1 and Rule 2:413. We "will not consider any portion [of a statute] meaningless unless absolutely necessary." *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 14 (2019) (quoting *Logan v. City Council*, 275 Va. 483, 493 (2008)). Indeed, on brief, Rodriguez himself acknowledges that "Rule 2:413 permits admission of other crimes precisely *because* of their power to establish propensity."

Moreover, admitting evidence solely to establish propensity is not inherently unconstitutional. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Dowling v. United States*, 493 U.S. 342, 352 (1990). An evidentiary rule violates the Due Process Clause only if the rule "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the

community's sense of fair play and decency.'" *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (first quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935); and then quoting *Rochin v. California*, 342 U.S. 165, 173 (1952)). The Supreme Court of the United States has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling*, 493 U.S. at 352. "There is no stronger presumption known to the law than that which is made by the courts with respect to the constitutionality of an act of Legislature." *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 581 (2017) (alteration in original) (quoting *Whitlock v. Hawkins*, 105 Va. 242, 248 (1906)).

The "primary guide in determining whether the principle in question is fundamental is . . . historical practice." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (plurality opinion). The defendant bears the burden to "show that the principle of procedure violated by the rule (and allegedly required by due process) is '"so rooted in the traditions and conscience of our people as to be ranked as fundamental."'" *Id.* at 47 (emphasis omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).

Virginia courts have not expressly addressed a constitutional challenge to the admission of evidence solely to establish propensity. When Virginia evidentiary rules have similar counterparts in federal law, however, we can look to federal courts for guidance. *See Blankenship*, 69 Va. App. at 700-01; *Cousins v. Commonwealth*, 56 Va. App. 257, 273 n.5 (2010). And of course, we may look to federal law when adjudicating rights under the federal constitution. *See L.F. v. Breit*, 285 Va. 163, 182 (2013). We have recognized that Federal Rule of Evidence 414 is "analogous to Code § 18.2-67.7:1 and Rule 2:413."[8] *Blankenship*, 69 Va. App. at 699. Several federal courts of appeal have held that admitting evidence under Federal Rule of Evidence 414 does not violate constitutional due process. *See, e.g.*, *United States v. Coutentos*, 651 F.3d 809, 819 (8th Cir. 2011);

---

[8] Federal Rule of Evidence 414 provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

*United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001); *United States v. Castillo*, 140 F.3d 874, 881 (10th Cir. 1998). And many other courts have reached the same conclusion regarding Federal Rule of Evidence 413, which similarly allows for the admission of past-crimes evidence solely to prove propensity in sexual assault cases.[9] *See, e.g.*, *United States v. Porter*, 121 F.4th 747, 752 (9th Cir. 2024); *United States v. Harvel*, 115 F.4th 714, 736 (6th Cir. 2024); *United States v. Schaffer*, 851 F.3d 166, 177 (2d Cir. 2017); *United States v. Julian*, 427 F.3d 471, 487 (7th Cir. 2005); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998); *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998).

Examining the historical precedents, the Ninth Circuit has noted that, although propensity evidence is historically disfavored, "courts have routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions." *LeMay*, 260 F.3d at 1025. The Tenth Circuit has similarly described "[t]he history of evidentiary rules regarding a criminal defendant's sexual propensities [a]s ambiguous at best, particularly with regard to sexual abuse of children." *Castillo*, 140 F.3d at 881; *see also LeMay*, 260 F.3d at 1025 ("[E]vidence of historical practice does not lead to a clear conclusion."). That history cuts against the defendant, who bears the burden of establishing that the challenged rule violates a procedure that is deeply rooted in historical practice. *Egelhoff*, 518 U.S. at 47.

In rejecting due process challenges to the admission of evidence under Federal Rules of Evidence 413 and 414, the federal courts have reasoned that evidence of other bad acts is routinely admitted for purposes other than propensity, even though the danger of unfair prejudice still exists in those circumstances. *Castillo*, 140 F.3d at 882; *LeMay*, 260 F.3d at 1026; *see also Lisenba v. California*, 314 U.S. 219, 227-28 (1941) (upholding the constitutionality of the common law

---

[9] Federal Rule of Evidence 413 provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."

equivalent of Federal Rule of Evidence 404(b)). Federal courts have also pointed to the balancing test in Federal Rule of Evidence 403, which mirrors Virginia Rule of Evidence 2:403, as a reliable safeguard of fundamental fairness. *LeMay*, 260 F.3d at 1026 ("As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."); *Castillo*, 140 F.3d at 882-83 (characterizing Rule 403's existence as the "most significant factor favoring Rule 414's constitutionality").

We find these federal cases persuasive. By contrast, Rodriguez does not identify any case where the admission of past-crimes evidence was found to violate the United States Constitution. Instead, he points to two cases in which state courts have found that such evidence violates a *state* constitution. *See State v. Cox*, 781 N.W.2d 757, 761 (Iowa 2010); *State v. Ellison*, 239 S.W.3d 603, 608 (Mo. 2007). But the Iowa Supreme Court explained in *Cox* that it does not necessarily interpret the Iowa and United States Constitutions identically.[10] *Cox*, 781 N.W.2d at 761. And "Missouri voters effectively overturned *Ellison*" by amending the Missouri Constitution in 2014 to expressly allow for the admission of prior criminal acts in prosecutions for sexual offenses against children. *State v. Thigpen*, 548 S.W.3d 302, 311 (Mo. 2017). In other words, it appears that the Missouri electorate has expressed the conscience of the people, as has our legislature. Put simply, neither of Rodriguez's state cases overcomes the persuasive authority from the federal courts.[11]

---

[10] Rodriguez does not present any argument as to whether or why the protections of due process protections afforded under the Iowa Constitution are substantially similar to the ones afford by the Virginia Constitution.

[11] Rodriguez's only other authority is Chief Justice Warren's statement in *Spencer v. Texas*, 385 U.S. 554, 575 (1967) (Warren, C.J., concurring in part and dissenting in part), that "[e]vidence of prior convictions has been forbidden because it jeopardizes the presumption of innocence of the crime currently charged." But that statement is from a 58-year-old dissent. The majority in *Spencer* upheld Texas statutes allowing evidence of prior convictions to be admitted during the guilt phase and considered for sentencing purposes, emphasizing that the Court was not "a rule-making organ for the promulgation of state rules of criminal procedure." *Id.* at 555, 564.

Finally, and keeping in mind the importance of the balancing test to the constitutional analysis, we conclude that the trial court did not abuse its discretion in balancing the probative value of the evidence against the danger of unfair prejudice to Rodriguez. In *Blankenship*, we affirmed the trial court's admission of past-crimes evidence due in part to the similarity of the prior offenses and the defendant's charges, indicating that a prior conviction's probative value increases to the extent it is similar to the charged offenses. *Blankenship*, 69 Va. App. at 702-03; *see also Kelly*, 510 F.3d at 437 (recognizing "the similarity between the previous offense and the charged crime" as a relevant factor when applying the parallel Federal Rule of Evidence). Rodriguez's prior offenses are strikingly similar to his offenses in this case. Rodriguez stipulated in 2010 to meeting a Spanish-speaking woman at church, agreeing to babysit her pre-pubescent daughters, and sexually abusing them while doing so. Those are essentially the same facts charged in this case, making evidence of Rodriguez's prior convictions highly probative.

On the other end of the scale, we must recognize that "all probative direct evidence generally has a prejudicial effect to the opposing party." *Lee v. Spoden*, 290 Va. 235, 251 (2015). Thus, we are concerned only with "unfair prejudice," which "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (quoting *Old Chief*, 519 U.S. at 180). Although evidence of Rodriguez's prior convictions was certainly prejudicial, we are mindful of the General Assembly's determination that such evidence in this context poses a lesser risk of unfair prejudice than in other contexts.[12] Consequently, the trial court

---

More recently, the United States Supreme Court declined to address "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime" and resolved the case on a narrower ground. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991).

[12] Rodriguez asserts that, "[i]n any other context," admitting evidence solely to establish propensity "would obviously be improper, and there is no logical reason to conclude otherwise here." Of course, Code § 18.2-67.7:1 and Rule 2:413 provide the logical reason.

acted within its discretion when it found that the danger of *unfair* prejudice did not substantially outweigh the evidence's probative value. Accordingly, the trial court neither abused its discretion nor violated Rodriguez's constitutional rights by admitting the 2010 sentencing order.

## II. Rodriguez's Motion to Strike Juror 12

Both the United States and Virginia Constitutions guarantee the right to be tried by an impartial jury. U.S. Const. amend. VI; Va. Const. art. I, § 8; *see also* Code §§ 8.01-357, -358. "For that guarantee to be effective, persons accused of violating criminal laws must be provided with 'an impartial jury drawn from a panel . . . free from exceptions." *Taylor v. Commonwealth*, 61 Va. App. 13, 22 (2012) (quoting *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976)). That panel must be "free of potential bias or other disqualifying characteristics before" the parties "exercis[e] peremptory challenges." *Ramos v. Commonwealth*, 71 Va. App. 150, 157 (2019).

"[A] trial court's denial of a motion to strike a juror for cause 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (alteration in original) (quoting *Townsend v. Commonwealth*, 270 Va. 325, 329-30 (2005)). Whether a potential juror can be impartial is a question of fact, "and the trial court's determination on the subject is '"entitled to great deference on appeal"' unless 'plainly wrong or unsupported by the record.'" *Id.* (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014)). We are also mindful that "a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be str[uck]." *Id.* (alteration in original) (quoting *Teleguz v. Commonwealth*, 273 Va. 458, 475 (2007)).

On the other hand, it is well settled that "any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." *Castillo v. Commonwealth*, 70 Va. App. 394, 423 (2019) (quoting *Breeden*, 217 Va. at 298). In other words, in determining whether a prospective juror can

give the accused a fair and impartial trial, "nothing should be left to inference or doubt." *Goodwin v. Commonwealth*, 71 Va. App. 125, 135 (2019) (quoting *Scott v. Commonwealth*, 58 Va. App. 265, 270 (2011)). In determining whether a jury can be fair and impartial, "we consider the juror's *voir dire* in its entirety" and do not focus on isolated statements. *Keepers v. Commonwealth*, 72 Va. App. 17, 45 (2020).

A juror who "has expressed or formed any opinion, or is sensible of any bias or prejudice, . . . is excluded by the law." *Northcraft v. Commonwealth*, 78 Va. App. 563, 588 (2023) (quoting *Keepers*, 72 Va. App. at 42). "[I]t is not uncommon to discover during *voir dire* that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." *Id.* (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). A preconceived opinion is disqualifying only if it is of "that *fixed character* which repels the presumption of innocence in a criminal case" and demonstrates that, in the juror's mind, "the accused stands condemned already." *Id.* at 589 (quoting *Justus v. Commonwealth*, 220 Va. 971, 976 (1980)). A trial court commits manifest error by "refusing to strike a juror" whom the record shows "cannot or will not lay aside his or her preconceived opinion." *Id.* (quoting *Harvey*, 76 Va. App. at 454).

We have very recently summarized these principles in an opinion addressing juror voir dire.

> The process of proper juror examination, as outlined in these cases, reinforces principles that ensure a litigant's right to an impartial jury. First, judicial neutrality is critical. Courts must avoid leading, pressuring, or suggesting the "right answer" when questioning jurors. Second, ambiguous or equivocal answers by jurors who have previously expressed bias are problematic; a prospective juror should be able to articulate impartiality—and equivocal responses to clarifying inquiries will generally be inadequate to overcome previously stated bias. Third, the totality of circumstances controls, as opposed to focusing on answers in isolation. A juror's entire voir dire exchange must ultimately reflect impartiality—and unresolved expressions of bias are not

remedied by a single affirmative response to a leading question. By the same token, one concerning juror response cannot be highlighted in isolation where it is fully explained and clarified elsewhere, and the record confirms the prospective juror can be impartial. Fourth and finally, courts must err on the side of caution. Because the defendant has a right to an impartial jury, all doubts as to a prospective juror's bias or impartiality must be resolved in the accused's favor.

*Burton v. Commonwealth*, 85 Va. App. 408, 423 (2025) (internal citations omitted).

Rodriguez argues that the trial court erred by denying his motion to strike Juror 12. We agree.[13] Juror 12 expressed her belief "that a person is more likely to be guilty of an offense if he has been convicted of similar offenses before." As we explained in Part I, this is the atypical case where evidence of the defendant's prior convictions was admissible as substantive evidence of the defendant's guilt. Accordingly, in this particular case, the broad view that evidence of prior crimes was probative of guilt would not necessarily have required Juror 12's removal.

But Juror 12 went further. When the trial court asked whether her knowledge of Rodriguez's prior crimes would be "so overwhelming in [her] thought process that [she] couldn't fairly and impartially listen to the facts and the evidence and make a decision based upon the facts and the evidence," Juror 12 responded, "[i]t would be very hard, yes." Put another way, Juror 12 affirmatively stated that "[i]t would be very hard" for her to fairly and impartially decide the case based on *all* the evidence and would be inclined to convict based on Rodriguez's prior convictions alone. That statement cast her partiality into question. As we have explained, Rodriguez's prior convictions were relevant. The jury could, for example, consider them when assessing whether Rodriguez had the propensity to commit the types of acts of which S.C. and I.C. accused him. But

---

[13] Rodriguez also argues that the trial court erred by refusing to strike Juror 20. Because we reverse due to the trial court's refusal to strike Juror 12 we need not address the court's ruling concerning Juror 20. "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).

prior convictions alone cannot prove any element, let alone each element of the charged offenses beyond a reasonable doubt.

Nor did the voir dire in its entirety establish that Juror 12 could set aside her fixed opinion. The trial court denied Rodriguez's motion to strike Juror 12 because Juror 12 "said that she could be fair and impartial." True, Juror 12 had said that she could be fair and impartial "[i]f [she] had to be" when the Commonwealth questioned her about her past experiences as a victim. But again, when the topic turned to Rodriguez's prior convictions, her response was that "[i]t would be very hard" for her to be fair and impartial. Her ability to set aside her prior personal experiences did not mean that she could also set aside her apparent belief that a defendant with similar prior convictions was likely guilty, regardless of other evidence.

Juror 12's statement that knowledge of Rodriguez's prior offenses would be "overwhelming" in her mind demonstrated a fixed opinion that required rehabilitation.[14] But there was no attempt to rehabilitate Juror 12, as neither the trial court nor the attorneys asked her any further questions. While we afford great latitude to the trial court in its interpretation of an ambiguous statement by a juror, it cannot arbitrarily interpret a "yes" to mean "no" without some explanation that affords us the opportunity to assess the validity of that interpretation. Accordingly, the trial court erred by denying Rodriguez's motion to strike Juror 12.

---

[14] We have deferred to trial courts when they have declined to strike jurors who say that they "think" they can be impartial. *See, e.g.*, *Keepers*, 72 Va. App. at 45; *Weeks v. Commonwealth*, 248 Va. 460, 475 (1994). But Juror 12's response was the opposite, and was more akin to a juror stating that they do *not* think they can be impartial. *See Burton*, 85 Va. App. at 423 ("[A] prospective juror should be able to articulate impartiality—and equivocal responses to clarifying inquiries will generally be inadequate to overcome previously stated bias").

### III. Sufficiency of the Evidence[15]

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Barney*, 302 Va. at 97 (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"[D]etermining the credibility of the witnesses and the weight afforded [their] testimony . . . are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "We cannot disturb the [fact finder's] credibility determination unless [the witness's] testimony was 'inherently incredible, or so contrary to human experience

---

[15] We must address the sufficiency of the evidence supporting Rodriguez's convictions notwithstanding our conclusion that the trial court erred by retaining Juror 12 because, if the evidence was insufficient, "remand for retrial would violate the Constitution's prohibition against double jeopardy." *Parsons v. Commonwealth*, 32 Va. App. 576, 581 (2000).

as to render it unworthy of belief.'" *Abouemara v. Commonwealth*, 77 Va. App. 719, 731 (2023) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). "Witness testimony will not be found inherently incredible 'unless it is "so manifestly false that reasonable men ought not to believe it" or "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.""" *Hammer*, 74 Va. App. at 239-40 (quoting *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018)). Simply put, if a witness testifies to facts "'which, if true, are sufficient' to support the conviction" and the fact finder "bases its decision 'upon that testimony'" there can be no relief in this Court. *Kelley*, 69 Va. App. at 626 (quoting *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010)).

Rodriguez claims that S.C. and I.C.'s testimony was inherently incredible for three reasons. First, he points out that they disclosed the abuse only upon express questioning from an adult more than a month after the abuse began. Second, he points to inconsistencies in the children's various statements. Finally, he claims that it is "incomprehensible" that he could have abused S.C. and I.C. repeatedly during the short time he was their babysitter and sometimes "within arm's reach of and in plain sight of the other children." None of these arguments render the testimony inherently incredible as a matter of law.

First, a child's delay in reporting sexual abuse is not "so contrary to human experience as to render it unworthy of belief." *Abouemara*, 77 Va. App. at 731. Indeed, we have recognized that delayed reporting is "completely consistent with the all too common circumstances surrounding sexual assault on minors—fear of disbelief by others and threat of further harm from the assailant." *Woodard v. Commonwealth*, 19 Va. App. 24, 28 (1994). An "unreasonably long" delay may "cast[] 'suspicion and doubt' on the victim's testimony," but only if there is no "credible explanation for such delay." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991) (quoting *Willis v. Commonwealth*, 218 Va. 560, 563 (1977)). Ultimately, "it [is] up to the jury to determine what

- 21 -

effect, if any, the delay in reporting the incident had on the credibility of the child's testimony." *Love v. Commonwealth*, 18 Va. App. 84, 90 (1994).

Here, the delay was not even particularly long. The children testified that Rodriguez abused them starting in January 2022. They first disclosed the abuse to Mancia in February 2022. That delay was far shorter than delays in other cases in which a child's testimony was determined not to be inherently incredible. *See, e.g.*, *Love*, 18 Va. App. at 90 (holding that 12-year-old victim's 7-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible); *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991) (concluding that juvenile victim's delay of 14 months "did not render his testimony inherently incredible" where his "youth, fright and embarrassment certainly provided the jury with an acceptable explanation for his behavior in these circumstances"). Furthermore, both children explained the delay. S.C. explained that Rodriguez told her that "he would do something bad" to her if she disclosed the abuse. And I.C. explained that she was "scared" and "embarrassed."

Second, the inconsistencies in the children's various statements do not render their testimony inherently incredible as a matter of law. "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley*, 69 Va. App. at 626. "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* "The mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006). Instead, it is a "circumstance [that] is appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*

Here, the jury was apprised of the various inconsistencies, including the shifting number of incidents and the conflicting testimony about the trampoline incident. The jury received as exhibits recordings of Hendricks's interviews with both children and a transcript of S.C.'s preliminary hearing testimony. And the jury heard expert testimony about child memory retention from both parties. It was the jury's role to consider that evidence and resolve any inconsistencies, not ours.

Finally, nothing about S.C. or I.C.'s claims was "incomprehensible." Rodriguez's abusive actions generally involved him touching the children over their clothes for a short amount of time. Such actions need not be ostentatious, and even though other children were sometimes nearby, it is within the realm of human experience that the abuse could go unnoticed, especially if the children's attention was otherwise occupied. Equally unpersuasive is Rodriguez's claim that he did not consistently have time in the morning to molest S.C. or I.C., as none of the incidents to which they testified lasted for more than a few minutes.

Accordingly, we decline to overturn the jury's credibility determination. Apart from arguing that the victims' testimony was inherently incredible, Rodriguez does not challenge the sufficiency of the evidence on any other ground. Therefore, we conclude that sufficient evidence supports his convictions, and the Commonwealth may retry him if so advised.

CONCLUSION

The trial court erred by not striking Juror 12 for cause, violating Rodriguez's right to a jury panel "free from exceptions." *Taylor*, 61 Va. App. at 22. Accordingly, we reverse Rodriguez's convictions and remand for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Petty, S.J., concurring.

I concur completely with the majority opinion apart from footnote 13. Because I believe that the error in juror selection amounted to two instances of the same error, I would also address the trial court's ruling concerning Juror 20.

After the trial court and Commonwealth questioned the venire, Juror 20 gave affirmative answers to defense counsel's questions whether any of the jurors "ha[d] any difficulty" presuming innocence or whether any of them believed that it was "more likely than not that Mr. Rodriguez [was] guilty of some wrongdoing simply because he [was] accused and [was] on trial." When the court then asked the jurors as a group if they understood its earlier instruction that Rodriguez was not required to prove his innocence, none of the jurors indicated that they would be unable to follow the law on that point.

The court and defense counsel later questioned Juror 20 individually. The Commonwealth did not ask Juror 20 any questions. Juror 20 explained that he had "a real issue with child molestation and anything related to that" and had formed his opinions after having spent time with his daughter, who was a "teacher in some tough neighborhoods." Stating that he had "heard" that witnesses from King's Daughters would testify, he opined that "they wouldn't be here if [Rodriguez] wasn't guilty. Period." When defense counsel asked him whether he was "having difficulty presuming [Rodriguez] innocent," Juror 20 responded—before defense counsel had completed the question—that he was "having a tough time." The trial court then asked Juror 20:

> And, sir, is that issue or that frame of mind something that you could set aside if the evidence was such that it didn't establish his [guilt by] proof beyond a reasonable doubt.
>
> In other words, could you fairly and impartially give your full attention to the facts and the evidence as they come out at trial and make a decision based upon that evidence and that evidence alone, not the allegations?

Juror 20 responded, "I guess I have to answer yes, but I'm going in jaded heavily." The court stated that it "appreciate[d] that" but asked again if Juror 20 could judge the case fairly and impartially notwithstanding his knowledge of his daughter's experience. Juror 20 responded, "[a]s an educated human being, yes, I mean . . . [.]"[16] Rodriguez moved to strike Juror 20 for cause, noting "a long hesitation" and "a very long pause" in Juror 20's final answer. Before the Commonwealth expressed a position, the trial court denied Rodriguez's motion, finding that Juror 20 "was just giving due consideration to the question."

Our case law recognizes a distinction between "clarifying questions," which may be "'necessary to determine the presence of bias' in the first instance" and questions intended to rehabilitate a juror who has expressed a preconceived bias. *Northcraft v. Commonwealth*, 78 Va. App. 563, 590 (2023). Here, there can be no dispute that Juror 20 expressed a preconceived bias against Rodriguez. He affirmed several times that he was "having a tough time" presuming Rodriguez's innocence. He explained that he had "a real issue with child molestation and anything related to that" stemming from his daughter's experience as a schoolteacher. And when he heard that witnesses from King's Daughters would be testifying, he stated that "they wouldn't be here if [Rodriguez] wasn't guilty. Period." At that point, Juror 20's bias was abundantly clear, and rehabilitation was necessary.

The Commonwealth did not attempt to rehabilitate Juror 20. Only the trial court did so. But "[w]hen a juror initially indicates prejudice or a predisposition, the court may not direct the juror's rehabilitation." *Keepers v. Commonwealth*, 72 Va. App. 17, 45 (2020). When the trial court itself asks rehabilitative questions, "we must review the court's decision to retain the person on the panel more carefully." *Northcraft*, 78 Va. App. at 590 (quoting *Harvey v. Commonwealth*, 76 Va. App. 436, 456 (2023)). This is so because, "[w]hen asked by the court, a

---

[16] The trial transcript contains the ellipses.

suggestive question produces an even more unreliable response." *Bradbury v. Commonwealth*, 40 Va. App. 176, 181 (2003). "A juror's desire to 'say the right thing' or to please the authoritative figure of the judge, if encouraged, creates doubt about the candor of the juror's responses." *Id.* Consequently, "[m]ere assent to a trial judge's questions or statements . . . is not enough to rehabilitate a prospective juror who has initially demonstrated a prejudice or partial predisposition." *Keepers*, 72 Va. App. at 46 (second alteration in original) (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 625 (1995)). Instead, "[p]roper rehabilitation begins by instructing the potential juror on the correct principle of the law (in this case, the presumption of innocence)." *Scott v. Commonwealth*, 58 Va. App. 265, 272 (2011). "Once the potential juror acknowledges that he can apply this principle of law, the juror must then be allowed to reconcile it with his previous views." *Id.* In short, "[e]vidence of the requisite qualifications for impartial service must emanate from the juror, unsuggested by leading questions." *Keepers*, 72 Va. App. at 46 (quoting *Gosling v. Commonwealth*, 7 Va. App. 642, 646-47 (1989)).

Simply put, the trial court did not follow the proper procedure here. After Juror 20 left no doubt that he already considered Rodriguez guilty, "Period," the court asked if he could set "that issue or that frame of mind" aside and "fairly and impartially give [his] full attention to the facts and the evidence . . . and make a decision based on . . . that evidence alone, not the allegations." Juror 20's response of "I guess I have to answer yes, but I'm going in jaded heavily" explicitly referenced his desire to say the right thing while simultaneously undermining the truth of the response suggested by the trial court's question. Apparently recognizing that Juror 20's response did not rehabilitate him, the trial court asked essentially the same question a second time. The trial court's persistence in the face of clear bias undermined the appearance of

"judicial neutrality."[17] *See Burton v. Commonwealth*, 85 Va. App. 408, 423 (2025). Faced with such persistence, Juror 20 responded, "[a]s an educated human being, yes, I mean . . . [.]" But that answer was at best "[m]ere assent to . . . [a] leading inquiry, [which] is not enough to rehabilitate a prospective juror who has initially demonstrated a prejudice or partial predisposition." *Scott*, 58 Va. App. at 273 (second alteration in original) (quoting *Griffin*, 19 Va. App. at 625). The trial court never gave Juror 20 an opportunity to reconcile, in his own words, his preconceived belief that Rodriguez was guilty with the presumption of innocence. The court was required to resolve "any reasonable doubt as to a juror's qualifications . . . in favor of the accused." *Castillo v. Commonwealth*, 70 Va. App. 394, 423 (2019). Its failure to do so was error, and I believe that error should be addressed in this opinion.

---

[17] Indeed, not only did the Commonwealth decline to ask Juror 20 any rehabilitative questions, it did not even expressly oppose Rodriguez's motion to strike.